```
               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Joseph Crocco

   v.                                    Civil No. 19-cv-882-LM
                                          Opinion No. 2020 DNH 137
Richard Van Wickler et al.

**O R D E R**

Before the court is Joseph Crocco's amended complaint. Crocco asserts that defendants violated his Eighth Amendment rights while he was in the custody of the Cheshire County Department of Corrections (the "DOC").[1] Crocco's amended complaint is subject to preliminary review pursuant to 28 U.S.C. § 1915A.

The court previously granted Crocco leave to amend his pleading to clarify the basis for his claims against the defendants.[2] On July 9, 2020, Crocco filed a statement of facts (doc. no. 8) that he apparently intended to serve that purpose.

---

[1] Crocco is currently in the custody of Federal Correctional Institution, Williamsburg.

[2] Crocco brings his claims against DOC Superintendent Richard Van Wickler, DOC psychologist Barnes Peterson, DOC Sergeant Michael Oulette, DOC Captain Thomson (first name unknown), DOC Major James Erwin, DOC Sergeant McKim Mitchell, and DOC Sergeant Jeremy France. Each defendant is sued in both his official and individual capacities.

The court construes Crocco's filing of July 9 as supplementing rather than superceding his originally filed complaint, and accordingly construes doc. nos. 1 and 8 as collectively constituting his amended complaint.

## PRELIMINARY REVIEW STANDARD

The court conducts a preliminary review of prisoner complaints filed by inmates seeking relief from government officials. See 28 U.S.C. § 1915A. In determining whether a pro se pleading states a claim, the court construes the pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding allegations constituting legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Following preliminary review, the court must dismiss a prisoner's claims sua sponte if the court determines that it lacks subject-matter jurisdiction, that the defendant is immune from the requested relief or from suit, or that the complaint fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A(b); Fed. R. Civ. P. 12(h)(3).

**BACKGROUND**

Crocco alleges that on September 25, 2017, while he was being held at the DOC, he was convicted and sentenced for an unspecified crime.  After he learned of his conviction, he advised other DOC inmates that he intended to take his own life.  Those inmates reported Crocco's suicidal ideation to Sergeant Oulette, the DOC shift supervisor.  Crocco believes that, pursuant to DOC policy, such reports are forwarded to DOC psychologist Peterson, who is then required to interview the inmate.  Crocco additionally believes that it is DOC policy for Peterson to interview all inmates at the conclusion of their trials.  Peterson did not, however, interview Crocco either to investigate his possible suicidal ideation or to check in with him after the conclusion of his trial.  Crocco alleges that Peterson had actual knowledge that Crocco feared that he could not survive a prison sentence, and that in light of this knowledge, Peterson's failure to interview him constituted deliberate indifference to his safety.

After receiving the report that Crocco intended to take his own life, Sergeant Oulette observed Crocco giving all of his belongings away to other inmates.  Sergeant Oulette asked Crocco how he was doing, and stated that he had heard that Crocco had "had a bad day."  Crocco told Sergeant Oulette to leave, and Sergeant Oulette complied.  Sergeant Oulette did not order

Crocco isolated or placed on suicide watch. Crocco alleges that Sergeant Oulette had actual knowledge of Crocco's history of mental health issues, in light of which his failure to take more effective measures constituted deliberate indifference to the risk that Crocco would harm himself.

Either that same evening or the following morning, Sergeant Oulette reported Crocco's suicidal ideation to Captain Thomson. Captain Thomson briefed some of the duty officers (including Sergeants Mitchell and France) regarding Crocco's situation. Crocco believes that Major Erwin, Superintendent Van Wickler, and Peterson may have been present at the briefing.

Crocco slept in his cell that night. In the morning, Crocco approached duty officers Sergeants Mitchell and France to request a shaving razor. Although the officers had been briefed regarding Crocco's suicidal ideation, they gave him the razor, first receiving authorization to do so from Major Erwin.

Crocco returned to his cell, where he shaved his face. Crocco then used the razor blade to cut two deep incisions into his carotid artery. After making the cuts, Crocco turned out the light in his cell, got in his bunk, and pulled blankets over his head. Shortly thereafter, he lost consciousness. When he awoke, he was in a hospital bed, having received medical attention while unconscious.

Crocco attaches a number of DOC incident reports as exhibits to his complaint. Those reports tend to confirm that inmates reported Crocco's suicidal ideation to Sergeant Oulette, that Sergeants Mitchell and France had been briefed by Captain Thomson regarding Crocco's intent to take his own life, and that Sergeants Mitchell and France provided him with a razor after receiving authorization to do so from Major Erwin. There is no suggestion in the reports that either Superintendent Van Wickler or Peterson was present at any briefing where Crocco's situation was discussed.

The reports state that after giving Crocco the requested razor, Sergeants Mitchell and France increased the frequency of their checks on Crocco. The reports indicate that Sergeants Mitchell and France observed the light go off in Crocco's cell at 8:33 a.m. on September 26, 2017, and that at approximately 8:41 a.m. Sergeant France entered Crocco's cell to check on him. The reports indicate that when Sergeant France found Crocco unconscious and bleeding from the neck, he called for medical assistance. The reports indicate that Crocco received emergency medical care from DOC medical personnel until the arrival of an ambulance. Medical personnel then transported Crocco to a hospital for further care.

5

**DISCUSSION**

A public official's deliberate indifference to the strong likelihood that a prisoner will inflict harm upon himself violates the Eighth Amendment's prohibition against cruel and unusual punishment. Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991); see also, e.g., Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558, 560 (1st Cir. 1988). "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). The crux of the deliberate indifference determination in the context of prison suicide is whether the prison officials knew or should have known about the prisoner's suicidal tendencies. Torraco, 923 F.2d at 235.

Crocco's only allegation regarding Superintendent van Wickler's actual or constructive knowledge of the risk that Crocco would harm himself is that he believed the Superintendent might have been present when Captain Thomson briefed the duty officers. Crocco offers no allegation that Superintendent Van Wickler had easily available measures he could have taken to prevent the risk to Crocco which he failed to take. None of Crocco's allegations reasonably supports the conclusion that

6

Superintendent Van Wickler was deliberately indifferent to Crocco's safety.  Because Crocco's amended complaint fails to state a claim against Superintendent Van Wickler as to which relief can be granted, Crocco's Eighth Amendment claim against the Superintendent is subject to dismissal on preliminary review.

By contrast, Crocco alleges the existence of two DOC policies pursuant to which DOC psychologist Peterson should have been aware of the risk to Crocco's safety:  a policy requiring that suicide risks be reported to him and a policy requiring him to interview inmates at the conclusion of their trials.  Crocco further alleges that Peterson was actually aware that Crocco suffered from mental health issues, and should therefore have understood that Crocco was at significant risk of self-harm.  If the truth of Crocco's allegations were established, a finder of fact could reasonably conclude that Peterson had actual or constructive knowledge of the risk to Crocco.  Moreover, as a DOC psychologist, Peterson had available measures to him (including isolating Crocco or placing him on suicide watch) that could have mitigated the risk.  Crocco's allegations are therefore at least minimally sufficient to state a claim against Peterson at this early stage of these proceedings.

Crocco clearly alleges that Sergeant Oulette learned about Crocco's suicidal ideation from other inmates (and corroborated

their reports with his own observations), and that he reported the risk to Captain Thomson.  Crocco appears to base his claim against Sergeant Oulette on the theory that the Sergeant displayed deliberate indifference by merely passing information about the risk to Crocco up the chain of command rather than by taking the initiative to order Crocco into isolation or suicide watch on his own authority.  In light of Crocco's allegation that Sergeant Oulette had actual knowledge of Crocco's history of mental health problems, these allegations are at least minimally sufficient to support an Eighth Amendment claim at this pleading stage of proceedings.

Similarly, Captain Thomson had clear authority to order precautionary measures such as isolation or suicide watch but declined to do so.  Crocco's allegations against Captain Thomson are therefore at least minimally sufficient for his claim to survive preliminary review.

As to Major Erwin and Sergeants Mitchell and France, Crocco's allegations are that all three had been briefed regarding his suicidal ideation and knew that he was at significant risk of self-harm.  Crocco alleges that after he asked that the Sergeants provide him with a razor, they asked Major Erwin how to proceed, and he directed them to provide the requested razor.  The exhibits to Crocco's amended complaint indicate that after providing the razor, the Sergeants increased

8

the frequency of their surveillance of Crocco's activities, and that they responded swiftly and appropriately within minutes after Crocco harmed himself.

The allegations and exhibits clearly support a claim against Major Erwin.  The DOC incident reports attached as exhibits to Crocco's complaint establish that, at the time he gave his authorization, Major Erwin was aware of at least some degree of risk that Crocco would attempt to harm himself, and he could easily have ordered the Sergeants not to provide the requested razor or to allow him to use it only under close supervision.  Major Erwin nevertheless authorized the Sergeants to provide Crocco with a razor.  This is sufficient to support the conclusion that Major Erwin demonstrated deliberate indifference to Crocco's safety.

Although it is a closer call, the allegations are likewise at least minimally sufficient to support an Eighth Amendment claim against the Sergeants.  Sergeants Mitchell and France had been briefed regarding the risk that Crocco would harm himself.  The court acknowledges that Crocco's request for a razor was approved by the Sergeants' superior officer; the court further acknowledges that the Sergeants took some measures calculated to mitigate the risk to Crocco when they increased their surveillance checks.  However, the most obvious and easily available measures to safeguard Crocco from harm would have been

9

either to refuse to provide him with a razor or to permit him to use the razor only under close supervision. Construing Crocco's allegations in the light most favorable to him, provision of a razor to an inmate known to be a suicide risk could constitute deliberate indifference to a grave risk of harm to the inmate.

Moreover, at this stage of these proceedings it is not clear on the face of Crocco's amended complaint that any of the defendants enjoy qualified immunity from suit.[3] It is well established in the First Circuit that deliberate indifference to the risk that an inmate would attempt suicide is an actionable violation of an inmate's constitutional rights. See, e.g., Bowen v. City of Manchester, 966 F.2d 13, 16 (1st Cir. 1992). In consequence, the First Circuit has found that an official is not entitled to qualified immunity where the official had actual knowledge of an unusually serious risk of self-inflicted harm but failed to take obvious steps to address the risk. See id. At this stage of proceedings, Crocco's allegations are sufficient to avoid dismissal at the stage of preliminary review on qualified immunity grounds.

The court accordingly finds that Crocco's Eighth Amendment claims against Peterson, Sergeant Oulette, Captain Thomson,

---

[3] The court makes no finding as to whether some or all of the defendants may ultimately be able to establish, on the basis of a fully developed record, that they are entitled to qualified immunity.

Major Erwin, Sergeant Mitchell, and Sergeant France are sufficiently stated and supported in the amended complaint to allow them to proceed.  By allowing these claims to proceed at this stage, the court finds only that those claims are sufficiently stated to allow Crocco to initiate this action, and to require the defendants to respond to the complaint after they are served.  At this early stage of the proceedings, the court does not make any finding as to the merits of Crocco's claims or of any defenses the defendants may raise.

## CONCLUSION

For these reasons, Crocco's Eighth Amendment claim against Superintendent Van Wickler is dismissed without prejudice.  Crocco's claims are allowed to proceed against Peterson, Sergeant Oulette, Captain Thomson, Major Erwin, Sergeant Mitchell, and Sergeant France.  The court directs the clerk's office to prepare summonses for, and serve, those defendants at the DOC address:  825 Marlboro St, Keene, NH 03431.  See 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(e) and 4(j).  The clerk's office is further directed to forward to the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office"), the summonses, copies of this Order, and the amended complaint (doc. nos. 1 and 8).  Upon receipt of the necessary documentation, the U.S. Marshal's office shall serve process

upon the defendants listed above, pursuant to Fed. R. Civ. P. 4(c)(3), 4(e), and 4(j).

Defendants are instructed to answer or otherwise plead within twenty-one days of service. See Fed. R. Civ. P. 12(a)(1)(A).

After the complaint is served, Crocco may serve documents on defendants, or their attorneys who have appeared in this action, in accordance with Fed. R. Civ. P. 5(b) or AP 2.8(b). Thus, as to any party or attorney who is not registered to use the court's electronic filing system, Crocco may serve all future pleadings, written motions, notices, or similar papers directly on defendants by delivering or mailing the materials to defendants or their attorney(s), pursuant to Fed. R. Civ. P. 5(b). As to any attorney or party that is registered to use the court's electronic filing system, Crocco need not serve a hard copy of his filings on that party or attorney, as a party using the electronic filing system will receive notice when Crocco's documents are filed in the court, so mailing a hard copy of the same filing to that party or attorney is unnecessary. AP 2.8(b) does not cover discovery requests and responses, however, which means that copies of certain Rule 26 disclosures, discovery requests, and responses must still be mailed to other parties or their attorneys, pursuant to Fed. R. Civ. P. 5(d)(1). A

certificate of service must be included with all filings, in accordance with Fed. R. Civ. P. 5(d)(1) and LR 5.1(d).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 10, 2020

cc: Counsel of Record

13