UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Joseph Crocco</u>

    v.       Civil No. 19-cv-882-LM
    Opinion No. 2022 DNH 045 P

<u>Richard Van Wickler, et al.</u>

**O R D E R**

Plaintiff Joseph Crocco, an inmate formerly housed at the Cheshire County Department of Corrections ("Cheshire County Jail"), brings suit against defendants Barnes Peterson, Sergeant Michael Ouellette, Captain Michael Thompson, Major James Erwin, Sergeant McKim Mitchell, and Sergeant Jeremy France.  Crocco alleges that the defendants violated his Eighth Amendment rights because they acted with deliberate indifference to the strong likelihood that Crocco planned to harm himself and failed to take measures to address that risk.  Defendants move for summary judgment (doc. no. 16) on the ground that Crocco failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PRLA"), 42 U.S.C. § 1997e(a).  Crocco objects, and defendants filed a reply.  For the following reasons, the court denies defendants' motion for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is proper only if the moving party can demonstrate "that there is no evidence in the record to support a judgment for the nonmoving party."

Celotex Corp. v. Catrett, 477 U.S. 318, 332 (1986); see also Fed. R. Civ. P. 56(a).  If the moving party succeeds in making that showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The nonmoving party's failure to meet that burden by reference to "significantly probative" materials "of evidentiary quality" entitles the moving party to summary judgment.  Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citations omitted).  In evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence.  Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## BACKGROUND

Crocco was incarcerated at Cheshire County Jail between July 25, 2018, and November 1, 2018.  His suit relates to a suicide attempt that occurred just after the conclusion of his federal jury trial.  In brief, Crocco alleges that defendants should have known about his plan to die by suicide and should have taken "easily available measures" to prevent him from attempting suicide.  See Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

I.        <u>Suicide Attempt</u>

After the conclusion of Crocco's jury trial on September 25, 2018, Crocco was brought from the courthouse to the Cheshire County Jail. He was distraught and began giving away his possessions. Other inmates noticed Crocco's emotional state and told corrections officers, including a shift supervisor, that they believed Crocco intended to harm himself. The shift supervisor went to Crocco's cell that night and asked him how he felt. The shift supervisor left Crocco's cell after a short conversation and Crocco went to sleep.

The next day, September 26, Crocco attempted suicide. Crocco cut himself with the blade from a shaving razor that Cheshire County Jail staff gave him that morning. Crocco turned off his cell light, laid down on his bed, pulled the blankets on his bed up to his chin, and lost consciousness. Crocco woke up in a hospital and returned to the jail the next day.

Back at the Cheshire County Jail, officers placed Crocco in an observational cell. In the observational cell, Crocco remained isolated for 24 hours a day. Officers did not permit Crocco any possessions, including pens or pencils. He could not access the dayroom of the jail where the inmate grievance kiosk is located.

Crocco could leave the cell only when officers transported him to shower. Transport to the showers involved a contingent of "six to twelve" corrections officers who handcuffed Crocco, ran a chain around his waist, shackled his legs, and ran the chain from his waist to his legs. Corrections officers then escorted Crocco to the showers with a corrections officer in front of him, behind him, and on each side

holding his arms.  At the showers, the officers removed Crocco's chains and shackles, and he was allowed to undress and shower.  When he finished with his shower, officers restrained Crocco in the same manner and walked him back to his cell.

While Crocco was in the observational cell, Crocco asked a shift supervisor (Sgt. Michael Ouellette) for a pen and pencil, but the shift supervisor refused to provide one.  Defendants dispute Crocco's version of the facts and assert that it is not the jail's protocol to have six to twelve officers transport prisoners, that Crocco was able to access a pen and pencil, and that Crocco met with counsel appointed to represent him in his federal trial while he was in the observational cell.

Crocco averred that officers kept him in the cell for at least seven days after the suicide attempt.  In their briefs, the parties did not discuss when, exactly, Crocco was released from the observational cell.[1]  Crocco was transferred to a federal prison on November 1, 2018.

II.    Cheshire County Jail's Grievance Procedure

Defendants' summary judgment motion relates to Crocco's alleged failure to comply with the Cheshire County Jail's administrative grievance procedure before bringing this suit.  Cheshire County Jail's inmate manual contains the requirements of the grievance procedure.  At the time of Crocco's suicide attempt in

---

[1] Defendants' reply indicates that Crocco has asserted in the past that he was released from the observation cell 14 days after the suicide attempt.

2018, the inmate manual stated the following about how inmates can bring grievances:

> Should you experience a situation where you feel that you have been unfairly treated or denied rights that you are entitled under the rules and regulations of this facility, it is mandatory that you submit a grievance on the kiosk or in writing to allow for correcting of the problem.  Below is what is necessary for a grievance submittal.
>
> - Your name, the date, and your housing unit
> - Nature of the grievance
> - Dates and times of occurrence
> - Names of individuals involved
> - Narrative of the incident
>
> This grievance must be submitted to the Superintendent, the Compliance Officer or the Shift Commander within Seven (7) Calendar days of the event. All grievances will be reviewed. Written responses will be returned **if warranted.** If written please turn these into your Dayroom Officer. Grievances will be accepted via the kiosk (limited Space) or written, no form necessary.

Doc. no. 16-5 ¶ 4.  The inmate manual is available to inmates at the jail "dayroom" in paper form and through a "kiosk."

Crocco did not file any grievance pursuant to Cheshire County Jail's grievance procedure about this incident.  He did not file any grievance during his time at Cheshire County Jail or afterward.

## DISCUSSION

Defendants move for summary judgment, arguing that Crocco failed to exhaust his administrative remedies at the jail prior to bringing this suit.  Crocco objects, arguing that the administrative remedies defendants contend Crocco failed to exhaust were not available to him.  Specifically, Crocco argues that he could not

5

access the inmate kiosk to submit a grievance while he was held in the observational cell for at least seven days after his suicide attempt. He notes that the shift supervisor also refused to provide him with a pen or pencil with which he could write a grievance. In reply, defendants argue that Crocco's assertions about the facts are not credible in light of his past statements.

The PLRA requires incarcerated plaintiffs to exhaust available administrative remedies before bringing any federal suit about prison conditions. 42 U.S.C. § 1997e(a). The Cheshire County Jail's inmate manual defines the grievance procedure that inmates must follow to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 218 (2007). The court lacks discretion to consider any claim challenging prison conditions unless the plaintiff has satisfied the exhaustion requirement. Burns v. Croteau, No. 19-cv-7-LM, 2020 WL 6546057, at *1 (D.N.H. Nov. 6, 2020). Therefore, the court must dismiss claims that have not been exhausted. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

But the requirement to exhaust administrative remedies extends only to those remedies that were "available" to the inmate. 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 642 (2016). Administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643-44. An administrative remedy is also unavailable when officers are "unable . . . to provide any relief to aggrieved inmates." Id. at 643.

Taking the facts in the light most favorable to Crocco, a reasonable jury could find that administrative remedies were unavailable to Crocco while he was housed in the observational room. Crocco averred that he was not permitted access to the inmate kiosk to submit a grievance form. He has also attested that he was refused a pen and pencil to write out a grievance while in the observational cell.

To be sure, defendants dispute Crocco's assertions. Specifically, in their reply, defendants argue that Crocco has said that he did not know or believe he had to file a grievance "immediately"; that he was on "suicide watch" for 14 days; and that he was recuperating and researching avenues of recourse after being released from "suicide watch." Under Rule 56, the material facts must be undisputed to warrant summary judgment in the movant's favor, and the court does not make credibility findings at the summary judgment stage. Harris, 835 F.3d at 29. However, even at the summary judgment stage the court cannot ignore "apparent contradiction[s]" between a litigant's past and present sworn assertions. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). But here Crocco's prior assertions are not inconsistent with his current material assertion, which is simply that he could not have used the jail's administrative procedure while he was held in the observational room (i.e., "suicide watch").

In addition, a reasonable jury could find that use of the administrative grievance procedure was unavailable to Crocco even after defendants released Crocco from the observational room. As noted, a grievance procedure is also

unavailable to an inmate when corrections officers are unable to provide any relief through the procedure. Ross, 578 U.S. at 643.

Per the inmate manual, when seven days passed from the time Crocco attempted suicide, the time in which officers had authority to provide Crocco some relief for his grievance ended. As noted, taking the facts in the light most favorable to Crocco, corrections officers prevented Crocco from filing a grievance during the seven days when they had authority to act on it. Perhaps Crocco could have filed an untimely grievance, but the text of the inmate manual does not provide any exception or waiver of the limitations period when corrections officers deny an inmate access to the facilities and materials necessary to comply with the limitations period. And even if defendants were willing to consider an untimely grievance, Crocco had no way to know there were exceptions to the limitations period given the text of the inmate manual.

In nearly identical circumstances, the Second Circuit has held that an inmate is not required to exhaust an administrative grievance procedure before filing suit. See Rucker v. Giffen, 997 F.3d 88 (2d Cir. 2021). In Rucker, the plaintiff-inmate had a "severe medical condition" that resulted in a lengthy hospitalization. Id. at 93. The lengthy hospitalization prevented the plaintiff from filing a grievance within a five-day limitations period set by the facility's inmate manual. Id. About one year after his hospitalization, the plaintiff filed a grievance through the facility's administrative grievance procedure alleging denial of adequate medical care, but prison officials refused to consider it. Id. at 92. Prison officials pointed to

the inmate manual, which provided no exceptions to the five-day limitations period. See id. at 92-93.

Reversing the district court's ruling, the Second Circuit rejected the prison's argument that the plaintiff failed to exhaust administrative remedies. Id. at 94. Rather, it held that the PLRA does not require a plaintiff-inmate to comply with a prison's administrative grievance procedure when the inmate cannot access the procedure during the limitations period and, after the limitations period, prison officials would not consider his grievance, such that no relief was available. See id.

Similarly, here, because of the limitations placed on him by corrections officers, Crocco was unable to file a grievance during the applicable limitations period. There is no indication that defendants could have or would have considered an untimely filed grievance. Even if defendants would have been willing to consider an untimely grievance if Crocco had filed one, Crocco had no way to know that. The inmate manual did not inform Crocco that there might be any exception to the grievance procedure's limitations period for exceptional circumstances.

In sum, Crocco was unable to file a grievance within the seven-day limitations period and once that period elapsed there was no way for Crocco to recover whatever remedy he may have had through the grievance process. Even if defendants were willing to consider a grievance after the seven-day limitations period expired, they communicated no such willingness to Crocco, and the inmate manual did not include any exceptions to the seven-day limitations period. For

those reasons, defendants have not shown that they are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies.

## CONCLUSION

Defendants' motion for summary judgment (doc. no. 16) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 31, 2022

cc: Counsel of Record